# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**John S., Petitioner Below,**
**Petitioner**

**vs)  No. 14-1184** (Fayette County 14-C-193)

**David Ballard, Warden, Mount Olive**
**Correctional Complex, Respondent Below,**
**Respondent**

**FILED**

September 11, 2015
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner John S.,[1] *pro se*, appeals the order of the Circuit Court of Fayette County, entered November 12, 2014, denying his petition for a writ of habeas corpus. Respondent David Ballard, Warden, Mount Olive Correctional Complex, by counsel Laura Young, filed a response.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2010, petitioner resided with his future wife,[2] his ten-year-old son from a previous relationship, and his wife's nine-year-old niece, N.L., over whom his wife had guardianship. Petitioner was accused of sexually molesting N.L. beginning within weeks of him moving into his wife's home.

On January 9, 2013, petitioner was indicted on nine counts of sexual assault in the first degree pursuant to West Virginia Code § 61-8B-3 based on alleged acts occurring from June of 2010 through February of 2011; and nine counts of sexual abuse by a parent, guardian, custodian or person in a position of trust pursuant to West Virginia Code § 61-8D-5. Following a jury trial in May of 2013, petitioner was found guilty on all counts. The circuit court thereafter denied petitioner's post-trial motions and sentenced him to an aggregate term of ninety-five to three hundred and forty years of incarceration.

---

[1] Consistent with our practice in cases involving sensitive facts, we use only petitioner's first name and last initial, and identify the minor victim only by her initials. *See State ex rel. W.Va. Dept. of Human Services v. Cheryl M.*, 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987).

[2] Petitioner and his wife married in November of 2010.

1

Petitioner appealed his convictions, which this Court affirmed in *State v. John S.*, No. 13-0780, 2014 WL 2682873 (W.Va. Supreme Court, June 13, 2014) (memorandum decision). In his criminal appeal, petitioner made the following assignments of error: (1) petitioner's convictions were supported by insufficient evidence; (2) the child victim's testimony was not credible; (3) the West Virginia Rules of Evidence were violated by the circuit court admitting hearsay evidence, including the child victim's letter to her guardian and her written interview answers; and (4) petitioner's trial was unfair because the circuit court failed to disqualify a juror, who was his ex-wife's cousin. *Id.*, at *2-5.

Petitioner filed a petition for a writ of habeas corpus on July 15, 2014. On August 20, 2014, petitioner filed a motion to disqualify Judge John W. Hatcher, Jr. from presiding over his habeas case. Judge Hatcher subsequently transmitted the motion to this Court for a ruling. By an administrative order, entered on September 22, 2014, the Chief Justice denied petitioner's motion for disqualification, and directed Judge Hatcher to continue to preside over this case.

In his habeas petition, petitioner raised the following grounds for relief: (1) ineffective assistance of counsel; (2) double jeopardy; (3) insufficient evidence; (4) disproportionate sentence; (5) erroneous admission of hearsay evidence; (6) improper comments by prosecutor; (7) cumulative error; and (8) actual innocence.[3] On November 12, 2014, the circuit court entered a twenty-nine page order rejecting petitioner's grounds and denying his habeas petition.

Petitioner now appeals the circuit court's denial of his habeas petition. We apply the following standard of review in habeas cases:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 418, 633 S.E.2d 771, 772 (2006).

On appeal, petitioner seeks this Court's ruling that the circuit court judge who presided over petitioner's criminal case may not preside over his habeas proceeding. Petitioner's proposed rule is contrary to longstanding and well-reasoned West Virginia precedent. *See State ex rel. Watson v. Hill*, 200 W.Va. 201, 204, 488 S.E.2d 476, 479 (1997) (trial judge is sufficiently familiar with underlying proceedings to determine most habeas issues without hearing). Accordingly, we decline petitioner's invitation to alter or extend existing law.

Second, petitioner argues that the circuit court erred in denying his petition without appointment of counsel and an evidentiary hearing. Petitioner contends that the circuit court's order cannot be deemed comprehensive when the court did not allow for the factual development

---

[3] On appeal, petitioner appears to contradict his actual innocence claim by stating that his habeas case "is not about whether he is guilty or innocent" of sexually molesting N.L.

2

of petitioner's claims. Petitioner alleges this is especially true of the ineffective assistance of counsel claim, which this Court has often stated must be litigated in a collateral proceeding. *See Losh v. McKenzie*, 166 W.Va. 762, 766-67, 277 S.E.2d 606, 610 (1981). Respondent counters that all of petitioner's claims are either meritless, not cognizable in habeas corpus, previously rejected by this Court in *John S.*, and/or now waived because petitioner could have raised those issues in *John S.*, but did not do so. Accordingly, respondent urges this Court to adopt the circuit court's well-reasoned findings and conclusions explaining why petitioner's petition lacked merit.

We note that the circuit court may deny a petition without a hearing or appointment of counsel "if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syl. Pt. 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657, 658 (1973). Also, "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. Pt. 4, *State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 130, 254 S.E.2d 805, 806 (1979), *cert. denied,* 464 U.S. 831 (1983). Finally, issues which were adjudicated or waived in a prior proceeding may be summarily denied pursuant to Rule 4(c) of the West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings. *See Losh*, 166 W.Va. at 767, 277 S.E.2d at 610 (pertinent question is whether habeas petitioner either knew or could diligently have known of issues that he could have had adjudicated in prior proceeding). Therefore, based on our review of the record before us, we find that the circuit court did not abuse its discretion in denying petitioner's habeas petition for reasons stated in the court's November 12, 2014, order.

We have reviewed the circuit court's November 12, 2014, order, and hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions.[4] The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 11, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[4] Certain names have been redacted. *See* fn. 1, *supra*.



# IN THE CIRCUIT COURT OF
# FAYETTE COUNTY, WEST VIRGINIA

JOHN S███████

Petitioner,

vs.

CIVIL ACTION NO. 14-C-193-H

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

Respondent.

## ORDER

On July 15, 2014, the Inmate Petitioner (hereinafter "Petitioner"), filed, pro se, a Petition seeking a writ of habeas corpus in regard to his felony convictions for eighteen (18) sex crimes and his subsequent incarceration in the Mount Olive Correctional Complex, situate in Fayette County, West Virginia.

The Court has conducted a preliminary review of the Petition pursuant to Rule 4 of the Rules Governing Post-Conviction Habeas Corpus Proceedings. After full and careful consideration and review of the Petition, relevant law, complete contents of the court file in the Petitioner's underlying criminal case, and the complete contents of the court file in the above-styled civil action, the Court makes the following Findings of Fact and Conclusions of Law.

# FINDINGS OF FACT

1. On January 9, 2013, a Fayette County Grand Jury returned a twenty (20) count Indictment No. 13-F-83 –H, charging the Petitioner with the following felony sex crimes:

   a) Count One (1), sexual assault in the first degree;

   b) Count Two (2), sexual abuse by a parent, guardian, custodian, or person in position of trust to a child;

   c) Count Three (3), sexual assault in the first degree;

   d) Count Four (4), sexual abuse by a parent, guardian, custodian, or person in position of trust to a child;

   e) Count Five (5), sexual assault in the first degree;

   f) Count Six (6), sexual abuse by a parent, guardian, custodian, or person in position of trust to a child;

   g) Count Seven (7), sexual assault in the first degree;

   h) Count Eight (8), sexual abuse by a parent, guardian, custodian, or person in position of trust to a child;

   i) Count Nine (9), sexual assault in the first degree;

   j) Count Ten (10), sexual abuse by a parent, guardian, custodian, or person in position of trust to a child;

   k) Count Eleven (11), sexual assault in the first degree;

l) Count Twelve (12), sexual abuse by a parent, guardian, custodian, or person in position of trust to a child

m) Count Thirteen (13), sexual assault in the first degree;

n) Count Fourteen (14), sexual abuse by a parent, guardian, custodian, or person in position of trust to a child;

o) Count Fifteen (15), sexual assault in the first degree;

p) Count Sixteen (16), sexual abuse by a parent, guardian, custodian, or person in position of trust to a child;

q) Count Seventeen (17), sexual assault in the first degree;

u) Count Eighteen (18), sexual abuse by a parent, guardian, custodian, or person in position of trust to a child;

r) Count Nineteen (19), sexual abuse in the first degree; and

s) Count Twenty (20), sexual abuse by a parent, guardian, custodian, or person in position of trust to a child.

2. Counts One (1) through and including Eighteen (18) of the aforementioned indictment charged felony sex crimes perpetrated against the minor niece of the Petitioner's wife, who was also said minor's legal guardian at the time of the alleged sexual abuse. Counts Nineteen (19) and Twenty (20) charged felony sex crimes perpetrated against the Petitioner's biological minor son.

3. On February 12, 2013, the Defendant, by his trial counsel, Assistant Fayette County Public Defender James A. Adkins, filed a "Motion to Sever" Counts Nineteen (19) and Twenty (20) from Counts One (1) through and including

3

Eighteen (18). On the same date, the Defendant, by counsel, filed a "Motion for Production of Grand Jury Transcript." Duplicates of said motions were apparently filed on March 18, 2013.

4. On April 15, 2013, the parties appeared for a motions hearing, whereat the Court granted the Motion to Sever, and found that the State had elected to proceed to trial first as to Counts One (1) through and including Eighteen (18). The Court, at the same hearing, also granted the "Motion for Production of Grand Jury Transcript." On April 29, 2013, an Order was entered memorializing the Court's aforementioned rulings.

5. A sealed copy of the aforementioned grand jury transcript was filed in the criminal case file on May 13, 2013.

6. The Court notes that both the Petitioner and the State filed additional pretrial motions and other pleadings in the underlying felony case. The Court resolved said motions prior to trial, but said motions are not discussed in detail herein because none are relevant to the grounds for relief raised in the instant Petition.

7. On May 15, 2013, the Petitioner appeared, with his aforementioned trial counsel, for a two (2) day petit jury trial. After the State rested its case in chief, the Defendant, out of the jury's presence, orally moved for a judgment of acquittal. Trial, Day One, p. 230-231. After hearing the arguments of counsel for the parties, the Court denied said Motion. Id., p. 232, ¶ 11-23. At the conclusion of the presentation of all evidence, an impartial jury of twelve (12) found the Petitioner guilty of all the aforementioned felony sex crimes charged in Counts

4

One (1) through and including Eighteen (18) of the Indictment. A Conviction Order was entered May 28, 2013.

8. On September 23, 2013, the Court, pursuant to the State's Motion to Dismiss, entered an Order dismissing felony Counts Nineteen (19) and Twenty (20) of the aforementioned Indictment.

9. On May 28, 2013, the Petitioner, by counsel, filed a pleading entitled "Motion for a New Trial." In said Motion, the Petitioner raised the following grounds for relief:

1) A juror did not answer some voir dire questions truthfully, i.e. that said juror had in the past attended the same church as the Petitioner, was a cousin of the Petitioner's ex-wife, and was familiar with the facts of the case before trial, and that the Petitioner failed to recall said juror's identity, or recognize said juror, until some days after the trial;

2) The State was permitted to introduce at trial unauthenticated writings made by the minor female victim during her Child Advocacy Center (CAC) forensic interview; and

3) The female victim's trial testimony on direct examination and cross-examination, by her own admission, was inconsistent as to when the Petitioner lived in the home of the victim's aunt, thus the State failed to meet its burden of proof.

10. On June 2, 2013, the Defendant appeared, with his aforementioned trial counsel, for a hearing pursuant his aforementioned "Motion for a New Trial." After hearing

5

the arguments of counsel for the parties, the Court denied the relief sought in the aforementioned Motion. An Order memorializing the Court's ruling was entered on June 19, 2013.

11. On July 2, 2013, the Defendant, with his trial counsel, appeared for a sentencing hearing. The Court, having reviewed the Presentence Report prepared by a probation officer, and having heard oral statements made by the Defendant, his counsel, and counsel for the State, ordered the following:

a) that the Defendant be sentenced to the West Virginia State Penitentiary system for an indeterminate term of not less than twenty-five (25) years nor more than one hundred (100) years for each of his convictions for the felony crime of sexual assault in the first degree, as charged in Counts One (1), Three (3), Five (5), Seven (7), Nine (9), Eleven (11), Thirteen (13), Fifteen (15), and Seventeen (17) of the indictment;

b) that the Defendant be sentenced to the West Virginia State Penitentiary system for an indeterminate term of not less than (10) nor more than twenty (20) years for each of his convictions for the felony crime of sexual abuse by a parent, guardian, custodian, or person in position of trust, as charged in Counts Two (2), Four (4), Six (6), Eight (8), Ten (10), Twelve (12), Fourteen (14), Sixteen (16), and Eighteen (18) of the indictment.

c) That the aforementioned sentences imposed as to the crimes in Counts One (1), Three (3), and Five (5) of the Indictment be served consecutively to each other;

6

d) That the aforementioned sentences imposed as to the crimes in Counts Two (2) and Four (4) of the Indictment be served consecutively with each other and with the crimes in Counts One (1), Three (3), and Five (5);

e) That the aforementioned sentences imposed as to the crimes in the remaining counts of the Indictment be served concurrently to each other and with the crimes in Counts One (1) through and including Five (5); and

f) That that the Petitioner be denied alternative sentencing, as he was not eligible for probation because of his refusal to undergo a psychiatric evaluation pursuant to West Virginia Code § 62-12-2(e).

12. The Court presided in all of the aforementioned proceedings, and thus is more than familiar with the facts of the underlying criminal case.

13. On July 3, 2013, the Court entered an Order appointing the Kanawha County Public Defender's Office, Appellate Division, as appellate counsel for the Petitioner in his criminal case.

14. On August 2, 2013, the Defendant, by his appellate counsel, filed a "Notice of Appeal" in the Supreme Court of Appeals of West Virginia.

15. On July 13, 2014, the Supreme Court issued Memorandum Decision No. 13-0780 affirming this Court as to all matters raised by the Petitioner on appeal. The Supreme Court specifically found the following arguments raised in the Petitioner's appeal to be without merit:

a) That the verdict was against the weight of the evidence;

7

b) That no physical evidence supported the claims of the minor female victim;

c) That the aforementioned minor victim exhibited confusion in her testimony as to the time and place of the aforementioned sex crimes and when the Petitioner came to live in the home where the victim lived with her aunt;

d) That neither the Defendant's expert nor the State's expert found physical evidence of vaginal penetration;

e) That the trial Court permitted hearsay evidence at trial in the form of a letter written by the aforementioned minor victim to her guardian and the aforementioned writings of the minor during her CAC forensic interview;

f) That the trial Court erred by failing to disqualify the juror herein mentioned in paragraph no. 9(1), who was the cousin of the Petitioner's ex-wife, and that the trial Court further erred by denying his aforementioned motion for new trial.

16. On August 20, 2014, the Petitioner filed a motion seeking the disqualification of the undersigned Judge. The Court denied said Motion in an Order entered September 18, 2014, a copy of which was sent to the Clerk of Court of the Supreme Court of Appeals of West Virginia.

17. On September 22, 2014, Chief Justice Robin J. Davis entered an Administrative Order, wherein the Chief Justice concluded that the Petitioner failed to set forth

8

sufficient evidence to warrant disqualification of the undersigned Judge. The Chief Justice ordered the undersigned Judge to continue to preside in the case sub judice.

18. In "Ground One (1)" of his Petition in the case sub judice, the Petitioner alleges that his aforementioned trial counsel was ineffective for the following reasons:

a) Failure to investigate the background of the State's expert witness and failure to effectively cross-examine said expert witness;

b) Failure to file a motion for change of venue;

c) Failure to obtain the grand jury minutes and testimony;

d) Failure to investigate numerous potential alibi witnesses and failure to call said witnesses to testify at trial;

e) Failure to properly object to the "State's arguments to admit" statements by the minor female victim, claiming that said statements were hearsay;

f) Failure to impeach the minor female victim on cross-examination;

g) Failure to properly cross-examine the minor female victim;

h) Failure to investigate the aforementioned post-conviction challenged juror;

i) Failure to properly investigate the Petitioner's case, including failure to obtain school attendance records of the minor female victim, which could have demonstrated that she was in school during the times of the aforementioned criminal conduct; and

j) Failure to make a "thorough closing argument;"

9

19. In "Ground Two (2)," the Petitioner alleges that the Court "committed reversible error" by sentencing him multiple times for the same criminal acts, claiming double jeopardy, pursuant to the Fourteenth Amendment to the United States Constitution, and Article III, Sections 5, 10, and 14 of the West Virginia Constitution.

20. In "Ground Three (3)," the Petitioner alleges that the Court "committed reversible error" by denying the Petitioner's "motion for judgment of acquittal, notwithstanding the jury verdict, requesting arrest of judgment." The Petitioner argues that the Court's denial of said motion constituted a denial of a fair jury trial for the Petitioner, in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article III, Sections 10 and 14 of the West Virginia Constitution.

21. In "Ground Four (4)," the Petitioner argues that the sentences imposed, as aforementioned, for his aforementioned felony convictions were "disproportionate to the underlying facts of his case."

22. In "Ground Five (5)," the Petitioner claims that the Court improperly admitted into evidence the minor victim's handwritten notes, made during her forensic interview, as well as a letter she had written "to her then guardian disclosing abuse." The Petitioner argues that said written evidence was hearsay.

23. In "Ground Six (6)," the Petitioner alleges that he was denied his right to a fair and impartial jury trial because the Court permitted "prosecutorial misconduct," in

10

the form of "improper" statements made by the State's counsel during his opening statement and closing argument. The Petitioner alleges that such "prosecutorial misconduct" violated his rights under Sixth and Fourteenth Amendments to the United States Constitution and Article III, Sections 10 and 14 of the West Virginia Constitution.

24. In "Ground Seven (7)," the Petitioner alleges that the Court committed "numerous" errors, the cumulative effect of which resulted in the Petitioner being denied a fair and impartial jury trial, in violation of the Fourteenth Amendment to the United States Constitution.

25. In "Ground Eight (8)," the Petitioner alleges his actual innocence of the aforementioned crimes for which he was convicted, citing the Fourteenth Amendment to the United States Constitution.

26. The Petitioner requests relief in the form of appointment of habeas corpus counsel, an omnibus habeas corpus hearing, and a new jury trial.

## CONCLUSIONS OF LAW

1. Jurisdiction and venue are proper in the Circuit Court of Fayette County, West Virginia.

2. Rule 4(c) of the Rules Governing Post Conviction Habeas Corpus Proceedings is as follows:

> The petition shall be examined promptly by the judge to whom it is assigned. The court shall prepare and enter an order for summary

11

dismissal of the petition if the contentions in fact or law relied upon in the petition have been previously and finally adjudicated or waived. The court's summary dismissal order shall contain specific findings of fact and conclusions of law as to the manner in which each ground raised in the petition has been previously and finally adjudicated and/or waived. If the petition contains a mere recitation of grounds without adequate factual support, the court may enter an order dismissing the petition, without prejudice, with directions that the petition be refiled containing adequate factual support. The court shall cause the petitioner to be notified of any summary dismissal. Rule 4(c).

3. To the extent that any of the Petitioner's grounds for relief raised in the Petition were or could have been raised on direct appeal to the Supreme Court of Appeals of West Virginia, said grounds for relief are now hereby deemed waived. Chapter 53, Article 4A, Section 1(c) reads as follows: "For the purposes of this article, a contention or contentions and the grounds in fact or law relied upon in support thereof shall be deemed to have been waived when the petitioner could have advanced, but intelligently and knowingly failed to advance, such contention or contentions and grounds before trial, at trial, or on direct appeal..." W.Va. Code § 53-4A-1(c).

4. "A writ of habeas corpus is not a substitution for a writ of error, and ordinary trial error not involving constitutional violations will not be reviewed." Syl. Pt. 4, State

12

ex rel. McMannis v. Mohn, 163 W.Va. 129, 254 S.E.2d 895 (1979), cert denied, 464 U.S. 831 (1983).

5.  "Ground One (1)" of the instant Petition alleges that trial counsel's representation of the Petitioner was legally ineffective. The Supreme Court of Appeals of West Virginia adopted several years ago the following two-pronged test for determining ineffective assistance of counsel claims, which the United States Supreme Court established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): "(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." State v. Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995).

6.  The Petitioner's claim that trial counsel failed to sufficiently investigate the background of the State's expert witness, Dr. Sharon Istafan, and to effectively cross-examine said expert witness is without merit. Trial counsel's questions of the aforementioned expert, during cross examination, which often contained sophisticated medical terminology, clearly reflected preparation, thoughtfulness, and an understanding of the important facts of the case sub judice, as described more fully infra.

7.  During cross-examination, the aforementioned expert witness testified that her physical examination of the female victim could not definitively determine if she had been "penetrated or just fondled." Trial, Day One, p. 125, ¶ 4-6. Trial

13

counsel thoroughly cross-examined said expert witness as to said expert's physical examination of the minor, the degree of the minor's physical development, and the likelihood that any injuries which the minor might have sustained because of potential sexual abuse. Id., p. 124-131. The Petitioner's argument that his trial counsel's cross-examination of the State's expert witness was inadequate is wholly baseless and without any legal justification.

8. The Petitioner's claim that his trial counsel failed to retain a defense expert witness is completely false. Trial counsel did retain Dr. Stephen Guertin, M.D., as a medical expert witness for the defense. Dr. Guertin, who resides in the State of Michigan, did not give live testimony at trial, but rather the jury was shown a DVD of the deposition testimony of Dr. Guertin. The doctor's testimony was based upon his review of the Dr. Istafan's report.

9. Dr. Istafan testified for the State that the only abnormality found in her examination of the female minor victim was some evidence of chronic irritation on the "anal cleft." Id., p. 119, ¶ 9-14. Further, the State's expert testified, while sexual abuse was a possible cause of such irritation, that she could not definitively determine if said irritation was caused by sexual abuse, and that "anything that rubbed that area could have caused that finding." Id., p. 119-120. Dr. Guertin testified, having reviewed Dr. Istafan's aforementioned findings, that "(n)ine to one they would be inconsistent with full penile/vaginal intercourse." Guertin Depo., p. 9, ¶ 4-5. Further, as to the anal irritation of the minor victim

14

found by Dr. Istafan, Dr. Guertin testified as follows: "It's hard to believe that that (sic) would be – you could try to make a case that could be from abuse, but it would be incredibly unlikely. It's more likely from the way she sits, what clothing she wears or if she scratches herself there. I mean that's what almost always what it's from." Id., p. 9, ¶ 20-25.

10. Clearly, based on the foregoing deposition testimony of Dr. Guertin for the Petitioner, it is quite ludicrous for the Petitioner to argue that his trial counsel was ineffective for failing to call an expert witness to impeach or discredit the State's aforementioned expert witness. Defense trial counsel clearly did use an expert in his efforts to impeach and discredit the State's expert.

11. The Petitioner argues that his trial counsel was ineffective for failing to move, prior to trial, for a change of venue. The Supreme Court has long held that the applicable standard to determine whether a change of venue was necessary is as follows:

> "To warrant a change of venue in a criminal case, there must be a showing of good cause therefor, the burden of which rests on the defendant, the only person who, in any such case, is entitled to a change of venue. The good cause aforesaid must exist at the time application for a change of venue is made. Whether, on the showing made, a change of venue will be ordered, rests in the sound discretion of the trial court; and its ruling thereon will not be disturbed, unless it clearly appears that the discretion aforesaid has been abused.' Point 2, Syllabus, State v. Wooldridge, 129 W.Va. 448, 40 S.E.2d 899 (1946).' Syllabus Point 1, State v. Sette, 161

15

W.Va. 384, 242 S.E.2d 464 (1978). Syl. pt. 1, State v. Derr, 192 W.Va. 165, 451 S.E.2d 731 (1994)." State v. Black. 227 W.Va. 297, 310-311, 708 S.E.2d 491, 504-505 (2010).

12.    The Petitioner's argument that his trial counsel was ineffective for failing to seek a change of venue is wholly without merit. The Court, having presided in the underlying criminal case, in addition to having reviewed the transcript and court file in the case judice, finds no compelling reason whatsoever which would have merited a change of venue, even had such a motion been filed and argued. If the mere fact that a criminal case may have received some media coverage was simply sufficient to justify granting a change of venue motion, virtually no felony criminal case would ever be tried in the county in which said crime was alleged to have been committed.

13.    The Petitioner further argues that his counsel was ineffective by failing to obtain a copy of the transcript of grand jury proceedings as to the aforementioned Indictment. This allegation is wholly untrue. Trial counsel did, in fact, file a motion seeking production of the relevant grand jury transcript, the Court granted said motion and ordered production of same, and same was subsequently produced, as described hereinabove in Findings of Fact No. Three (3) through and including Five (5).

14.    In "Ground One (1)," the Petitioner also sets forth a list of individuals he believes that his trial counsel should have called as alibi witnesses at trial. Other than

16

vaguely writing that said individuals could impeach the State's witnesses and provide alibi testimony on behalf of the Petitioner, the Petitioner offers absolutely no details or specifics as to what the so-called witnesses would have testified about, why his trial counsel elected not to call these individuals as witnesses, or any information whatsoever which would indicate that any of the named individuals might offer any manner of persuasive, credible, or admissible alibi evidence. Thus, this is simply a mere allegation absent any factual support. Simply producing a list of person's names and arguing that the testimony of said individuals would have been beneficial at trial is a baseless argument which any inmate convicted by a jury of felony crimes could raise, and same clearly does not entitle the Petitioner to his requested relief.

15.    Further, the Petitioner argues that his trial counsel should have deposed a "Gerald Richardson" because Mr. Richardson could "provide pertinent information about how (the minor victim) told her mother...that Mr. Richardson who is a convicted sex offender had sexually assaulted and abused her." This is a frivolous argument. This is simply a mere allegation absent any factual support. Additionally, even if the Petitioner's allegation had some factual basis, it is nonsensical to believe that an individual, not a party to the underlying felony case, would testify at a deposition as to details of how he or she had sexually or otherwise abused a minor.

17

16. The Petitioner also argues that Roy Smith, the "ex-boyfriend" of Hazel ████ the female minor victim's grandmother, was previously accused of sexually abusing the female minor victim, and that Mr. Smith should have been called as a witness by trial counsel. Mr. Smith was in fact called as a defense witness, and he testified at trial. Trial, Day One, p. 250-257.

17. Mr. Smith did not testify as to any allegations made against him by the female minor victim. Ms. L████ when asked if Mr. Smith had ever been accused of sexually abusing the female minor victim, Ms. L████ said "I made a statement, but it wasn't exactly accusing him of doing anything." Trial, Day Two, p. 13-14. Candace ████ wife of the Petitioner, and aunt and former guardian of the female minor victim, testified that said minor on "four or five" occasions had previously made allegations of sexual abuse, including that Mr. Smith had abused her. Id., p. 21.

18. Based upon the foregoing, there is no merit to the Petitioner's claim that trial counsel was legally ineffective by failing to call Mr. Smith as a witness. Mr. Smith was in fact called as a witness, and though he did not testify as to any allegations by the female minor victim against him, Ms. L████ and Ms. S████ both testified as to same. There would have been little or no benefit to question Mr. Smith as to the issue of his illegal conduct, as no allegations against him of sexual abuse made by the female minor victim have ever been substantiated; he almost certainly, like any rational person, would have merely totally denied that he had

18

ever sexually molested the minor female; and he was a cooperative defense witness who was testifying to other matters vital to the Petitioner's defense.

19. The Petitioner's argument that trial counsel failed to object to the admission into evidence allegedly "unverified and inadmissible hearsay statements and testimony of the child victim" is without merit. The Supreme Court, in the aforementioned Memorandum Decision, in this case, found that the evidence and testimony of which the Petitioner now complains was, in fact, properly admitted into evidence. Thus, the Petitioner's argument is clearly now moot.

20. The Petitioner argues that his trial counsel failed to effectively impeach the testimony of the aforementioned minor victim. A careful review of the transcript reveals that trial counsel did in fact thoroughly cross-examine the minor victim as to specific dates of numerous events, in an effort to demonstrate that her testimony as to the timeframe of the aforementioned felony sex crimes may not have been credible. Trial, Day One, p. 223-224. Further, on cross-examination, trial counsel questioned the minor victim as to details of the sexual abuse committed by the Petitioner. Id., p. 224, ¶15-24. Trial counsel's cross-examination of the minor victim was legally sufficient. From a trial tactic perspective, unduly rigorous questioning of a minor sexual abuse victim may very well have stirred great prejudice and emotions in the hearts and minds of jurors against the Petitioner and his trial counsel. The aforementioned cross-examination in no way amounted to ineffective assistance of counsel, especially

19

given the extraordinarily sensitive nature of the trial appearance of minor witnesses in cases such as the case sub judice.

21. The Petitioner also argues that his trial counsel failed to obtain the victim's school attendance records in an effort to demonstrate that the minor victim was present at school during times the aforementioned felony sex crimes were committed. The Petitioner points to no specific dates on which he believes the minor was in school during the time that any of the aforementioned sex crimes were committed.

22. Further, no exact, specific dates for the aforementioned criminal conduct were set forth in the Indictment. Our Supreme Court has previously held as follows:

> There was no requirement that the indictment in this case specify exactly when the alleged offenses occurred. Moreover, this Court has explained that '[a] conviction under an indictment charged, though the proof was at variance regarding immaterial dates, precludes a subsequent indictment on the exact same material facts contained in the original indictment.' Accordingly, we find no merit to this assignment of error." State v. David D. W., 214 W.Va. 167, 173, 588 S.E.2d 156, 162 (2003) (internal citations omitted) (overruled on other grounds).

23. The David D.W. case was, as recently as March 28, 2014, recognized as valid on this point of law by the Supreme Court in State v. Melvin G.S., Supreme Court Case No. 13–0561, writing that "because time was not an element of the sexual crimes charged against the defendant, the lack of definitive dates did not render

20

defendant's indictment legally insufficient." Thus, since the State did not have to prove specific dates upon which the aforementioned felony sex crimes were committed, it could not have reasonably been argued that trial counsel could have obtained school records to contest crimes which were committed on unknown or unidentified dates.

24. Further, the Supreme Court, in its Memorandum Decision in the case sub judice wrote that: "The State introduced evidence to support each of these elements (of the felony crime of sexual abuse by parent, guardian, custodian, or person in position of trust) through the testimony of N.L. N.L. testified that petitioner sexually abused her 'every day' after she came home from school, stating that he 'put his private in my private.'" Since the minor victim explicitly testified that the sexual abuse occurred after school, as recognized by the Supreme Court in the above-quoted Memorandum Decision, the Petitioner cannot now persuasively or effectively argue that trial counsel's failure to obtain school attendance records would have aided his defense in any legally material and successful way.

25. The Petitioner's claim as to trial counsel's failure to investigate the post-conviction challenged juror, hereinbefore mentioned, is also baseless. The trial Court previously found that the Petitioner himself failed to exercise diligence during jury selection, and the Supreme Court affirmed said ruling in the aforementioned Memorandum Decision. The Supreme Court further found, in said Memorandum Decision, that the Petitioner "did not present evidence that he

21

was diligent in assessing members of the jury." Clearly, it is not the fault of trial counsel that the Petitioner himself failed to exercise diligence during the jury selection process. Trial counsel cannot be expected to read the mind of a silent client.

26. Further, the Court notes that the Petitioner did not identify the juror in question until sometime after he was convicted. Thus, the Petitioner either failed to realize the identity of the juror throughout the entirety of the trial or, realizing her identity, hoped her presence on the jury would somehow benefit the Petitioner's hopes for acquittal, and, absent any help from the juror, the Petitioner after conviction informed his trial counsel of her identity and complained of unfairness.

27. The Petitioner argues that trial counsel's closing argument to the jury was insufficient. The Court, having presided over the aforementioned jury trial and having reviewed the transcript thereof, concludes that trial counsel's closing argument in no way amounted to ineffective assistance of counsel. In fact, Petitioner's trial counsel highlighted to the jury the strength of the testimony of the defense's expert witness and possible inconsistencies in the minor victim's testimony. The same was done in a very professional and thorough manner.

28. The Court, having reviewed the entirety of the Petitioner's ineffective assistance of counsel allegations, and in consideration of the overwhelming evidencing which supports the unanimous jury's eighteen (18) guilty verdicts, concludes that trial counsel's representation of the Petitioner was objectively reasonable, and

22

that the Petitioner has identified no errors by his counsel, founded in fact, but for which the results of the jury trial would have been in any way different. Thus, "Ground One (1)" of the Petition is without legal merit.

29. The Petitioner's "Double Jeopardy" argument in "Ground Two (2)," that he was subjected to multiple convictions and sentences for the same criminal conduct, is totally misplaced. The Petitioner apparently argues that he was subjected to Double Jeopardy because he was convicted of both sexual assault in the first degree and sexual abuse by a parent, guardian, custodian, or person in position of trust for the same conduct. Our Supreme Court has as written clearly and directly about this matter as follow:

> W.Va. Code, 61–8D–5(a), states, in part: "In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection[.]" Thus, the legislature has clearly and unequivocally declared its intention that sexual abuse involving parents, custodians, or guardians, W.Va. Code, 61–8D–5, is a separate and distinct crime from general sexual offenses, W.Va. Code, 61–8B–1, et seq., for purposes of punishment. Syl. Pt. 9, State v. Gill, 187 W.Va. 136, 416 S.E.2d 253 (1992).

30. The Petitioner was convicted of eighteen (18) distinct felony sex crimes, as defined by the West Virginia Code; the Supreme Court, in its Memorandum Decision in this case, concluded that the State produced legally sufficient

23

evidence at trial to support said convictions; and the Petitioner was sentenced accordingly. Thus, "Ground Two (2)" of the Petition is clearly without merit.

31. In "Ground Three (3)," the Petitioner argues that the Court committed error by failing to grant his Motion for Judgment of Acquittal at the conclusion of the State's case. The Supreme Court of Appeals of West Virginia, in its aforementioned Memorandum Decision No. 13-0780 in this case, specifically found that sufficient evidence existed to support the aforementioned convictions, writing as follows:

> To obtain convictions on the charges for sexual assault in the first degree, the State had to prove that the petitioner was at least fourteen years old, that he engaged in sexual intercourse or intrusion with N.L., and that N.L. was younger than twelve years old at the time. W.Va. Code § 61-8B-3(a)(2). To obtain convictions on the charges of sexual abuse by a parent, guardian, or custodian, the State had to prove that the petitioner sexually exploited or abused N.L. and that he did so while she was under his care, custody, or control. W.Va. Code § 61-8D-5(a). The State introduced evidence to support each of these elements through the testimony of N.L. N.L. testified that petitioner sexually abused her "every day" after she came home from school, stating that he "put his private in my private." Thus, the evidence was sufficient to sustain petitioner's conviction.

32. Clearly, "Ground Three (3)" of the Petition is totally without merit.

24

33. In "Ground Four (4)," the Petitioner argues that the trial Court abused its discretion by imposing the aforementioned sentences in the manner in which they were imposed. The Petitioner argues that said sentences violate the Eighth Amendment to the United States Constitution and Article III, Sections 5, 10, and 14 of the West Virginia Constitution.

34. The Supreme Court of Appeals of West Virginia has written the following concerning proportionality of sentences:

> The proportionality of sentences in criminal cases are measured and evaluated under the following standard: In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction. Syl. Pt. 2, State v. Williams, 205 W.Va. 552, 519 S.E.2d 835 (1999).

35. Further, the Supreme Court has consistently held that sentencing orders are given great deference, "unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, State v. Lucas, 201 W.Va. 271, 496 S.E.2d 221 (1997). The Sentencing Order in the Petitioner's case is, in no form or fashion, violative of any statutory or constitutional law. Further, by imposing concurrent, rather than consecutive, sentences as to thirteen (13) of the Petitioner's eighteen (18) felony convictions, the trial Court elected to impose a less severe sentence

25

than the maximum permitted by law. Clearly, "Ground Four (4)" of the Petition is without merit.

36. The claims contained in "Ground Five (5)" of the Petition, concerning the admissibility of evidence, were fully addressed by the Supreme Court in the Petitioner's direct appeal. The Supreme Court, in its aforementioned Memorandum Decision, found said claims to be wholly meritless. Further, even had these issues not been raised on direct appeal, they would now be waived because of the Petitioner's failure to previously raise said claims. Thus, claims of the Petitioner set forth in "Ground Five" of the Petition are waived.

37. In "Ground Six (6)," the Petitioner claims that he suffered from "prosecutorial misconduct," in the form of allegedly legally improper statements made by State's counsel in his closing argument. The Petitioner fails to cite the trial transcript anywhere in "Ground Six (6)."

38. The Court, having heard the State's closing argument at trial, and having reviewed the trial transcript of same, finds that absolutely no legally improper comments or statements were made by counsel for the State. Further, even if there was a factual basis to the Petitioner's claim, said claim is not of a constitutional dimension, is not cognizable in a habeas corpus case, and has previously been waived, because said ground for relief could and should have been raised on direct appeal. Thus, "Ground Six" of the Petition is wholly without merit.

26

39. In "Ground Seven (7)," the Petitioner argues that, pursuant to the grounds for relief set forth herein before, he suffered from "cumulative error" due to errors by his trial counsel and the trial Court. The Court has found all such arguments to be without merit, and that any ordinary trial error not of a constitutional dimension has previously been waived and is thus not cognizable in a habeas corpus proceeding, pursuant to the above-quoted Mohn case.

40. The Petitioner, in consideration of all the facts and circumstances in the underlying criminal case, clearly received that to which he was constitutionally entitled--- a fair and public trial by an impartial jury of his peers. Nonprejudicial errors, if any, which may have occurred, even if considered cumulatively, would not entitle the Petitioner to any of his requested relief. The United States Supreme Court has held from March 1953 forward that a criminal defendant is entitled to a fair jury trial, but not a perfect jury trial. Lutwak v. United States, 344 U.S. 644, 73 S.Ct. 481 (1953). Human nature understandably causes convicted criminal defendants to see a fair and impartial jury trial as one in which they have been fully acquitted of all charges.

41. For the aforementioned reasons, "Ground Seven (7)" of the Petition is clearly without merit.

42. In "Ground Eight (8)," the Petitioner argues his actual innocence of the crimes for which he was convicted. Given the overwhelming weight of evidence in support of the Petitioner's convictions for the aforementioned felony sex crimes, the

27

Supreme Court's refusal of the relief sought by the Petitioner on direct appeal in Memorandum Decision No. 13-0780, and the lack of any newly discovered evidence which supports the Petitioner's claim of innocence, this argument is wholly meritless and without any legal foundation.

43. Pursuant to West Virginia Code § 53-4A-7(c) and Rule 9(c) of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia, the Court concludes that the Petitioner raised grounds for relief pursuant to the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, and Article III, Sections 5, 10, and 14 of the West Virginia Constitution; and that said grounds for relief were argued, in writing, and decided under the applicable West Virginia and federal law.

44. The Supreme Court of Appeals of West Virginia has held as follows regarding the appointment of counsel in habeas corpus proceedings:

> "A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syl. Pt. 1, Perdue v. Coiner, 156 W.Va. 467, 194 S.E.2d 657 (1973).

45. Cleary, in consideration of the above-quoted case law, the Petitioner is not entitled to the appointment of counsel in the case sub judice.

28

Accordingly, It Is ORDERED that the relief sought in the Petition seeking a Writ of

Habeas Corpus be and the same is hereby DENIED.

It is further ORDERED that said civil action be and the same is hereby

DISMISSED.

The Clerk shall, forthwith, mail an attested copy of this Order to Inmate John

Stover, 1 Mountainside Way, Mount Olive, West Virginia 25185.

ENTERED this 12th day of November, 2014.

JOHN W. HATCHER, JR.
CHIEF JUDGE

att copy
J.S
Nov. 12, 2014